*Litchfield,*
June, 1846.

Atwood
*v.*
Vincent.

| 17 | 575 |
| 58 | 521 |

| 17 | 575 |
| 72 | 720 |

## Atwood *against* Vincent and others.

*A* mortgaged certain lands to the state to secure the payment of 2100 dollars and interest; and afterwards sold two parcels of the same land to *B*, who, in consideration thereof, bound himself to *A* to pay 1100 dollars towards *A's* debt to the state. *A* afterwards conveyed another parcel of the same land to *C*, by deed with warranty, for 275 dollars; and then conveyed all the residue of said land to *D*, by deed with warranty, subject to his mortgage to the state. It was then agreed between *A* and *D*, by a written agreement separate from the deed, that *D* should pay 2000 dollars of the mortgage debt to the state, and save *A* harmless therefrom: and it was also agreed between them, that the mortgage to the state, to that amount, should be chargeable upon the land conveyed to *D*. *E*, a creditor of *D*, with full knowledge of the agreement between *A* and *D*, then levied an execution on *D's* interest in the land conveyed to him, being an equity of redemption; but in the appraisal of it, the whole of the mortgage debt to the state was taken to be chargeable upon the land so levied on. The mortgage debt being wholly unpaid, the state brought a bill of foreclosure against all the parties having any interest in the premises, and obtained a decree limiting a certain time of redemption by *A*, and a further time for the other defendants. *A* had removed out of the state, before the foreclosure suit was brought; and relying upon his agreement with *D*, he did not appear in that suit, nor pay the mortgage debt within the time limited. *E* then paid such debt; and, in pursuance of an agreement between him and the state, made during the pendency of the bill of foreclosure, took from the state a conveyance of all its interest in the premises, which are of the value of 4000 dollars. Before the decree of foreclosure was passed, *B* had paid to the state 1100 dollars and interest, to be applied on the mortgage debt, and received a quit-claim deed from the state, of the land conveyed to him by *A*; so that when the decree was passed, the mortgage debt was only 1080 dollars, with 48 dollars, costs; which was the amount paid by *E* to the state. *C* is in danger of being ejected from the land conveyed to him by *A*; and *A* is in danger of being subjected to damages on the covenants in his deed to *C*. On a bill in chancery brought by *A* against *E*, *D* and others, it was held, 1. that *A* having no notice of the pendency of the bill to foreclose, his rights were not affected by the decree, nor by the agreement between the state and *E*, and the quit-claim deed to him; 2. that the agreement of *D* with *A*, that the mortgage debt should be a charge on the equity of redemption, being known to *E* at the time of his levy, bound such equity in his hands to that payment; 3. that *B* having failed to make the stipulated payment to the state, until after the agreement between *A* and *D*, *B* became bound in equity to pay the amount of his purchase to *A*, and the money which *B* afterwards paid to the state, will be considered as paid for *A's* benefit; 4. that the difference between the sum paid by *E* to the state, and the sum of 2000 dollars with the interest thereon, was equitably due from *E* to *A*.

What is agreed to be done, a court of chancery will either consider as done, or enforce as a matter which ought to be done, and carry it out by a decree.

A surety is entitled to the benefit of all the securities for the debt, which are available for his indemnity; and a person taking any of such securities from the principal debtor, with notice of his responsibilities, is bound in equity to

*Litchfield,*
*June,* 1846.

Atwood
*v.*
Vincent.

hold them for the indemnity of the surety, and is subject to all the equities, which the surety could originally enforce.

*Qu.* Whether a vendor of land has a lien thereon for the amount of the purchase money unpaid, not only against the vendee, but against others claiming under him, with full knowledge that such money remains unpaid.

Where it appeared, that *A* agreed to sell to *D* certain lands containing 1000 acres, at an average price of 20 dollars *per* acre, making the whole price 20,000 dollars, unless the result of the survey to be made should reduce this amount; and *D* agreed to pay that sum, in certain modes of payment, one of which was, by assuming 2000 dollars of *A's* debt to the state; *E* became the assignee of this agreement; and on the hearing before the committee, *E*, for the purpose of showing a partial failure of consideration, offered testimony to prove, that the deed from *A* to *D* included lands to which *A* had no title, and that the lands which he did own, embraced in such deed, fell short of the estimated quantity; it was held, that such testimony was admissible.

THIS was a bill in chancery, seeking special relief. The committee to whom the cause was referred, reported the following facts.

On the 9th of *January* 1833, *Buel Atwood*, the plaintiff, being owner of certain lands in *New-Hartford*, in this state, particularly described in the bill, conveyed them, by mortgage deed, to the state of *Connecticut*, to secure the payment of his bond for the benefit of the school fund, conditioned for the payment of 2100 dollars, and interest. He afterwards sold and conveyed, by quit-claim deed, to *Benjamin Beckwith*, two parcels of these lands; and in consideration of such conveyance, *Beckwith* bound himself to *Atwood* to pay 1100 dollars to the state towards the sum due on *Atwood's* bond. Afterwards, on the 3rd of *June* 1839, for the consideration of 275 dollars, *Atwood* sold and conveyed, by deed with warranty, to *Lester Tyler*, a certain other parcel of said lands. *Atwood* then sold and conveyed, by deed with warranty, all the residue of said lands, to *Walter Cunningham*, excepting however from the covenants in the deed, said mortgage to the state. The report then states, that " it was covenanted and agreed between said *Cunningham* and said *Atwood*, in and by an instrument in writing, separate from said deed, that said *Cunningham* should pay 2000 dollars of said mortgage debt to the state of *Connecticut*, and indemnify and save harmless said *Atwood* therefrom; " and that " it was also agreed between said *Atwood* and *Cunningham*, that said mortgage to the state of *Connecticut*, to the amount of 2000 dollars, should be chargeable upon the lands so conveyed by said *Atwood* to

said *Cunningham ;* and that said lands, so conveyed by said *Atwood* to said *Tyler* and to said *Beckwith,* should be discharged from the burden of said mortgage, to the extent of 2000 dollars, together with the interest on the same from the 1st day of *April* 1840 ; but should remain chargeable with the excess of said mortgage debt over and above 2000 dollars, and no more." *(a)* The interest of *Cunningham* in the premises was afterwards transferred to *Gilbert J. Vincent,* one of the defendants, by the levy of an execution in his favour against *Cunningham,* issued on a judgment rendered by the superior court, in *February* 1841, and levied on *Cunningham's* equity of redemption in the premises, subject to said mortgage to the state ; of which mortgage and said agreement between *Cunningham* and *Atwood* in relation to the redemption of said mortgage by *Cunningham, Vincent* had full knowledge, before the levy of his execution, and before the granting of the original attachment on which that execution issued. In setting off and appraising said equity of redemption, the whole of the

*Litchfield,*
June, 1846.

Atwood
*v.*
Vincent.

*(a)* The following, though not appended to the report, nor in any way made a part of it, is supposed to be a copy of the agreement referred to :

" Agreement made this 18th day of *April* 1839, between *Buel Atwood,* of *New-Hartford,* of the one part, and *Walter Cunningham,* of *Poughkeepsie,* of the other part, is as follows :

" The said *Buel Atwood* agrees to sell and convey to the said *W. Cunningham,* by deed with warranty in fee, subject to a mortgage for 2000 dollars thereon, five farms owned by the said *Atwood,* situate in *New-Hartford,* aforesaid, containing about 1000 acres of land, for the price or consideration of twenty dollars *per* acre ; the quantity of land to be ascertained by survey, at the expense of the said *Atwood ;* and the whole consideration of 20,000 dollars, or more or less, as the case may be, to be assumed and paid by the said *Cunningham,* as is hereinafter mentioned.

" And the said *Walter Cunningham* agrees to purchase of the said *Buel Atwood,* the five farms of land aforesaid, for the price or at the rate per acre aforesaid, and to pay for the same in manner following: To assume the payment of the 2000 dollars mortgage on said lands to the state of *Connecticut ;* to pay said *Atwood* 500 dollars in cash, as he may want the same ; to build a saw-mill on the lands hereinafter mentioned to be conveyed by said *Cunningham ;* to convey to the said *Atwood,* by warranty deed in fee, certain lands in the state of *New-York.*

" The possession of the *New-Hartford* lands to be given to the said *Cunningham,* on the 1st day of *April* 1840 ; and the said *Atwood* is to pay the interest on the said state mortgage, and the taxes charged on said lands, to the 1st day of *April* next.

[Signed.]       *W. Cunningham.*
           *Buel Atwood."*

mortgage debt to the state, being 2100 dollars, and the interest then due thereon, was taken and counted to be chargeable upon the lands set off under the execution ; and the appraisal of the equity of redemption was made on that basis.

The mortgage debt to the state being unpaid, a bill for the foreclosure of the equity of redemption in the mortgaged premises, was brought, by the state, before the superior court, at its term in *February* 1841, to which bill *Cunningham*, the *Dutchess County Bank* and *Atwood* were made parties, defendants ; and by a supplemental bill, *Vincent, Tyler* and two others, were also made parties, defendants. The superior court, at its term in *February* 1842, passed a decree of foreclosure against *Atwood* and the other defendants, limiting the time of redemption, by the former, to the first *Monday* of *September* 1842. Before the date of the bill for foreclosure, *Atwood* had removed from this state into the state of *New-York*, where he has ever since resided, and did not appear in said suit ; but relying on the payment by *Cunningham* or *Vincent*, according to the agreement, he neglected to make any inquiries on the subject, and took no notice of the suit.

During the pendency of the bill for a foreclosure, *Vincent* entered into an agreement with the agent and attorney of the state, that said decree of foreclosure should be passed, and might take effect ; and that after the time limited for the redemption of the premises had expired, the title of the premises should be conveyed, by the state, to *Vincent*, upon his paying the amount due upon the mortgage debt and the costs of suit. The time limited by the court for the redemption of the premises having expired, without redemption, the entire interest of the state in the premises was conveyed to *Vincent*, on the 10th of *October* 1842, by a quit-claim deed ; he paying no other consideration therefor than the amount of the mortgage debt and costs.

The value of the premises mortgaged by *Atwood* to the state, was and is more than 4000 dollars. The original debt, to secure which said bond and mortgage were given, was 2100 dollars, and no more.

On the 27th of *April* 1839, when *Cunningham* agreed to assume and pay 2000 dollars of said mortgage debt, *Beckwith* had not paid any portion of the principal of said sum of 1100 dollars, which, as before stated, he had agreed to pay ; and

Litchfield,
June, 1846.

Atwood
v.
Vincent.

it was then mutually agreed between *Cunningham* and *Atwood*, that inasmuch as *Beckwith* had neglected to pay said sum of 1100 dollars, *Cunningham* should pay the sum of 2000 dollars to the state, and *Atwood* should pay the residue of the debt to the state ; and that the 1100 dollars, which *Beckwith* had bound himself to pay to the state, should become due to *Atwood;* and in consequence of the neglect of *Cunningham* to pay the 2000 dollars to the state, *Beckwith* afterwards, *viz.* on the 28th of *January* 1842, paid to the state, as he was compelled to do, said sum of 1100 dollars, and the interest thereon, from the 27th of *April* 1839, to be applied on said mortgage debt, and received a quit-claim deed from the state, of the land so conveyed to him by *Atwood;* so that when the decree of foreclosure was obtained, the mortgage debt was 1080 dollars, 43 cents, and the costs 48 dollars, 51 cents, and no more.

By reason of the premises, *Tyler* is in danger of being ejected from the land so conveyed to him by *Atwood;* and *Atwood* is also in danger of being subjected to damages on the covenants in his deed of warranty to *Tyler.*

The interest of *Vincent* in the mortgaged premises, has not been charged with said sum of 2000 dollars and the interest thereon, of the mortgage debt ; but it has been charged with the debt of 1080 dollars, 43 cents, only.

On the      day of      , *Vincent* conveyed about      acres to said *Beckwith ;* he, at the time of such conveyance to him, having full knowledge of the contents of the deed of *Atwood* to *Cunningham*, and of the contract between *Atwood* and *Cunningham* in relation to the payment of the 2000 dollars by the latter to the state, and of all the facts above stated.

On the hearing before the committee, *Vincent*, by his attorney, *Leman Church*, Esq., offered evidence to prove, that the deed of *Atwood* to *Cunningham*, included lands to which *Atwood* had no title—which he did not own at the execution of the deed, and has not owned at any time since. *Vincent* also offered to prove, that the premises conveyed by *Atwood* to *Cunningham*, by said deed, contained, in fact, a less number of acres than was mentioned and described in said deed, whereby *Vincent* claimed, that there had been a breach of the covenants therein. At the same time, he offered to prove, that all the interest of *Cunningham* in said covenants, and all

his rights under the deed, had been sold and assigned to him, *Vincent;* and that he was then fully vested therewith. To the admission of this evidence, *Atwood,* by his attorney, *O. S. Seymour,* Esq., objected; and it was, by the committee, rejected.

The prayer of the bill was, that the decree of foreclosure, so far as it related to the plaintiff, *Atwood,* should be annulled; that *Vincent* should be restrained from any proceedings to disturb *Tyler,* or his grantees, in the possession of his or their possession of the parcel of land conveyed to him; that *Vincent* be decreed to convey the legal title in said parcel of land, to *Tyler,* and also to pay to the plaintiff such sum as with what he, *Vincent,* had already paid to the state upon the mortgage, should make the sum of 2000 dollars and interest; and that upon his failure to make such payment, within such reasonable time as the court should limit for that purpose, the plaintiff should be permitted to redeem the premises, upon payment to *Vincent* of the sum paid by him to the state, with interest; and that, on such redemption, *Beckwith* and the other parties defendants to said bill, be foreclosed. There was also the general prayer.

The case was reserved for the advice of this court on the question whether the report of the committee ought to be accepted, wholly or in part; and if so, what decree ought to be passed thereon.

*Seymour* and *Hollister,* for the plaintiff.

*Church,* for the defendant, *Vincent.*

CHURCH, J. The committee, upon whose report this case comes before us, among other facts, say, that it was agreed between *Atwood,* the plaintiff, and *Cunningham,* by an instrument in writing, separate from the deed by which the property in question was conveyed to *Cunningham,* not only that the latter should pay two thousand dollars of the mortgage debt to the state of *Connecticut,* and indemnify and save harmless the said *Atwood* therefrom, but also, that it was then agreed between them, that the state mortgage, to the amount of two thousand dollars, should be chargeable upon the lands thus conveyed; and that the land conveyed by *Atwood* to *Tyler*

and *Beckwith,* parcel of the mortgaged premises, should be discharged from the incumbrance to the extent of that sum, and the interest upon it from *April* 1, 1840, but should only remain charged with the excess of the mortgage debt above the sum of two thousand dollars, and no more. And we are referred to but one written instrument containing any contract between those parties. This contract contains no such stipulations as those last stated ; and if the committee intend to refer to this only, and have inferred the foregoing facts from it, as resulting from a fair construction of the contract, they are mistaken. There is no such inference of fact to be drawn from it, whatever may be the presumption of law. If the facts are such as the committee have either presumed from this paper, or found from some other, and they were known to *Vincent,* when he levied upon the land, there could hardly remain a specious question now to be settled in regard to the operation of that mortgage, as between these parties. What was agreed to be done, the court would either consider as done, or enforce as a matter which ought to be done, and carry it out by a decree, as the plaintiff claims. But if, as we suspect the truth is, there was no other written contract than the one to which the committee had reference, then we are to determine the respective equities of the parties from this and the other facts reported.

Let these facts be viewed in different aspects, and from different positions, and yet we think they will result in the conviction that the plaintiff is entitled to relief.

*Cunningham* paid no part of the state mortgage, although, by his agreement with *Atwood,* he was bound to pay two thousand dollars of it. And *Vincent,* who comes in under *Cunningham,* has paid only one thousand and eighty dollars on this debt; the balance having been paid by *Beckwith,* to relieve that part of the land purchased by him, from the same incumbrance. The result is, that *Atwood* has received for the land by him sold to *Cunningham,* eleven hundred dollars and interest less than its estimated value, and less than the amount which *Cunningham* agreed to pay ; and *Vincent,* who now holds the land, has obtained it for the same amount less than he knew *Cunningham* had agreed to pay. This balance is clearly due from *Vincent,* either to *Atwood* or *Cunningham.* We think it equitably due to the former.

HARVARD LAW LIBRARY

*Litchfield,*
*June, 1846.*

*Atwood*
*v.*
*Vincent.*

The foreclosure of the mortgage by the state, did not, in any respect, affect the rights of *Atwood*: he was no party to it, having received no legal or actual notice of the pendency of the bill to foreclose.    He is liable on the covenants in his deeds to *Tyler* and others, by reason of incumbrances, which *Cunningham*, by the payment of the aforesaid sum of two thousand dollars, agreed to extinguish.    *Beckwith* had previously agreed with *Atwood*, to pay eleven hundred dollars to the state, on the aforesaid mortgage, as the entire consideration of the land he had purchased ; and in no other way had he paid any thing for it.    But *Cunningham's* contract was intended to supersede this agreement with *Beckwith ;* and by reason of it, *Beckwith* was in equity bound to pay the amount of his purchase to *Atwood ;* and the committee find, that *Cunningham* thus understood and recognized the effect of his contract to be.    It is entirely obvious, unless *Vincent* shall pay to *Atwood* the sum really due from him, that, by reason of the default of **Cunningham**, of which *Vincent* was privy, *Atwood* will lose the entire consideration of his sale to *Beckwith*.    The clear principles of equity require, that these parties should be placed in the situation where they agreed to be placed ; and this can be effectually done, by compelling *Vincent* to pay the sum due from him, to *Atwood*, and not to *Cunningham*.

Again ; *Vincent*, when he levied his attachment and execution upon the equity of redemption of *Cunningham* in this land, knew of his unfulfilled contract with *Atwood ;* and the equity was appraised and set off to *Vincent*, under the incumbrance of the state mortgage.    But *Beckwith* has paid eleven hundred dollars of this incumbrance, and so far relieved *Vincent* from his obligation of paying it to the state.    To whom then shall he pay it ?

*Vincent*, the defendant, says, if he has received *Cunningham's* equity of redemption at an under-value, by reason of the payment made by *Beckwith*, he ought to pay *Cunningham*, who was the owner of this equity.    We say no.    The money paid by *Beckwith*, was paid for the benefit of *Atwood*—it was the consideration of the sale of *Atwood's* land to *Beckwith*, and in equity must be considered as the money of *Atwood*.    The committee do not find, that *Cunningham* is insolvent, to be sure ; and we know nothing more of him, than that by his utter disregard of obligations, he has brought *Atwood*, and

those to whom he has, in faith of these obligations, sold parcels of this land with warranty, into this unfortunate condition. We know of no principle, which, without adequate security or indemnity to *Atwood*, should induce us to permit the money thus equitably due from this defendant, to be paid over to *Cunningham*.

Further ; *Cunningham*, by his agreement with *Atwood*, assumed the payment of two thousand dollars of the state mortgage, as part of the consideration of his purchase. As between himself and *Atwood*, therefore, his was the primary duty of paying that sum, and he stood as principal debtor; and *Atwood*, whose bond was still outstanding at the treasury, stood as his surety to the state. The principle applicable to this position of the parties, is well settled. The surety is entitled to the benefit of all the securities, which are available for his advantage. *Vincent* has acquired his interest in this mortgage both from *Cunningham* and the state, with full knowledge of, and acquiescence in, all the responsibilities of *Cunningham*, and is, therefore, bound in equity still to hold it as a subsisting mortgage for the indemnity of *Atwood*, the surety of *Cunningham ;* and is subject to all such equities as this surety may enforce under the mortgage.

The plaintiff has referred us to another principle of equity, elsewhere recognized, as one which will entitle him to the relief he asks. It is that of a vendor's lien. That a vendor has a lien for the amount of the purchase money of land conveyed, not only against the vendee, but against others claiming under him, with full knowledge that such money remains unpaid, is a principle, which from the *Roman* law has been engrafted into the systems of equity jurisprudence of *England*, and some of the states of this union. There have been complaints of the practical operation of this principle, and wishes expressed, from high sources, that essential modifications in its application should be adopted. In this state, we have not yet had occasion to resort to it ; and whether it will be recognised as operative here, is a question which we shall leave to be determined in a case calling for a decision of it.

Still another question is presented, by the facts reported. It appears by the contract between *Atwood* and *Cunningham*, that the former agreed to sell to the latter, five farms in

*New-Hartford,* in this county, containing about one thousand acres, at an average price of twenty dollars *per* acre ; the precise quantity to be ascertained by survey ; making the whole price twenty thousand dollars, unless the result of the survey to be made, should reduce this amount. This sum *Cunningham* agreed to pay, by conveying to *Atwood* certain lands in the state of *New-York ;* by paying, or assuming to pay, to the state of *Connecticut,* the aforesaid sum of two thousand dollars ; by the payment of five hundred dollars in cash ; and in some other specified modes of payment. *Vincent* became the assignee of *Cunningham* under this contract, and was, of course, entitled to all the equities growing out of it, favourable to *Cunningham.*

On the hearing of this cause, by the committee, *Vincent* offered to prove, that the warranty deed of *Atwood* to *Cunningham* of the *New-Hartford* lands, included other and more lands than *Atwood* had title to ; and also, that the lands which he did in fact own, and which were conveyed by his deed, fell short of the quantity estimated in the contract. This evidence, upon objection, the committee rejected.

This proof was not offered by *Vincent,* for the purpose of establishing a claim of set-off, of which the plaintiff, in analogy to the rule applicable to actions at law, might have been entitled to notice ; nor was it offered to show an equity on the part of *Vincent,* as assignee of *Cunningham,* of which he could only avail himself, by answer or cross-bill ; but it was offered to measure the extent of the plaintiff's equity. So far as the title of *Atwood* was defective, or the estimated quantity of land fell short, so far the consideration of the conveyance had failed ; and to that extent, neither *Cunningham,* nor his assignee, was under either legal or equitable obligation to pay. Suppose the whole title had failed ; could *Atwood* sustain his bill for any relief ? This cannot be claimed. It is equally evident, that his relief could only be commensurate with the extent of his equities. We think, in this particular, the committee erred, and that the evidence thus offered should have been received.

We advise the superior court, that upon the facts already found and reported, the plaintiff is entitled to the relief he asks ; but we also advise, that the cause be sent back to the

committee, to hear the aforesaid evidence by them rejected, and amend their report accordingly.

In this opinion the other Judges concurred.

<em>Litchfield,</em><br>June, 1846.<br><br>Atwood<br><em>v.</em><br>Vincent.

Decree for plaintiff in part ; and<br>Report of committee recommitted.