SIMON AHREND *vs.* GEORGE F. ODIORNE & others.

Suffolk. March 15. — Sept. 4, 1875. AMES & ENDICOTT, JJ., absent.

In this Commonwealth, the vendor of real estate by an absolute deed has no lien thereon for the unpaid purchase money, in the absence of a written agreement of the parties to that effect.

A bill in equity alleged that the defendant agreed to cause a vessel, then building for him by a third person, to be finished and delivered to the plaintiff at a future time, in consideration of the immediate conveyance by the plaintiff to the defendant of a parcel of land, which conveyance the plaintiff made by an absolute deed ; that the defendant afterwards stated his inability to cause the vessel to be finished and delivered to the plaintiff, and notified the plaintiff that he would, if requested, reconvey the land to him ; that the defendant, although often requested, refused to make the conveyance ; that the defendant had caused fraudulent attachments to be made upon the land, and had fraudulently conveyed the land to a third person. Annexed to the bill were specific interrogatories relating to the matters alleged. *Held*, that, as a bill for specific performance of an agreement to reconvey the land, it appeared that the agreement was within the statute of frauds, that this fact could be taken advantage of by demurrer, and that the bill could not be maintained. *Held, also*, that the bill could not be maintained on the ground of fraud, or for discovery

BILL IN EQUITY, filed October 8, 1874, by Simon Ahrend against George F. Odiorne, Mary Louisa Stebbins and William Barnard, alleging the following facts :

In February, 1874, the defendant Odiorne and Retire C. Sturges represented to the plaintiff that certain persons were building a schooner for them in the State of Connecticut, and they thereupon agreed with the plaintiff to cause said vessel to be built, finished and delivered to the plaintiff on or before August 1, 1874 ; and in consideration thereof the plaintiff agreed to con

vey to them two parcels of land in Boston (described in the bill) of the value of $28,500, over and above certain mortgages. On February 7, 1874, the plaintiff, at their request, conveyed said parcels of land to Sturges and Odiorne, subject to certain mortgages, which the grantees agreed to pay.

On or about June 1, 1874, work on the schooner ceased, and it has since remained in an unfinished condition. Sturges and Odiorne, on or about said day, and repeatedly since, notified the plaintiff that they should be unable to build and deliver the schooner, and should not build and deliver it in accordance with their agreement; and that they would, if the plaintiff so requested, convey said parcels of land to him free from all incumbrances made or suffered by them. The plaintiff repeatedly requested them to convey the said parcels of land to him as they agreed; and Sturges on August 27, 1874, released and quitclaimed to the plaintiff one undivided half of said parcels of land, but the same was subject to incumbrances as hereinafter stated. Odiorne, though often requested, refused and neglected to convey to the plaintiff his one undivided half of said parcels.

On June 23, 1874, W. R. Burr brought an action against Odiorne, and caused his interest in said parcels of land to be attached to satisfy the judgment therein; and on August 7, 1874, Burr brought a second action against Odiorne, and caused the interest of Odiorne in said parcels of land to be attached to satisfy the judgment therein, and Odiorne has suffered these attachments to remain.

The defendant Stebbins is the sister of Odiorne, and she on July 15, 1874, at the request and for the benefit of Odiorne, and well knowing all the facts hereinbefore alleged, and that Sturges and Odiorne had received and retained the conveyance of the said parcels of land without having paid the consideration therefor, and that they intended not to pay the same, as the plaintiff is informed and believes, on July 15, 1874, at the request and for the benefit of Odiorne, brought a suit against Sturges and caused his interest in the two parcels of land to be attached, to satisfy the judgment in that action. Stebbins, as the plaintiff is informed and believes, then and there had no legal cause of action against Sturges, and knew all the facts hereinbefore stated. On July 31, 1874, Odiorne conveyed an undivided one half interest in said

parcels of land to Stebbins; which conveyance was without consideration; Stebbins then and there well knowing all the facts hereinbefore set forth, as the plaintiff is informed and believes and the conveyance was in fraud of the rights of the plaintiff.

On August 6 1874, Stebbins conveyed an undivided one half interest in the land to the defendant Barnard; which conveyance was made without consideration; the defendant Barnard then and there well knowing all the facts hereinbefore set forth, as the plaintiff is informed and believes, and the conveyance was in fraud of the rights of the plaintiff.

The bill contained specific interrogatories to the defendants on the various matters alleged. The prayer of the bill was for an injunction restraining the defendants from making any conveyance of the land, or placing any incumbrance or suffering any incumbrance to be placed thereon; and that they be decreed to hold said undivided one half interest in the land, subject to a lien in favor of the plaintiff for the value of the consideration agreed to be paid by Odiorne therefor, to convey to the plaintiff an undivided one half interest in said lands free from all incumbrances made or suffered by them; that they be decreed to remove and discharge the attachment on the interest of Sturges in the lands made in the suit of Stebbins against Sturges; that a proper person be appointed to collect and receive the rents or other moneys from the undivided one half interest in the lands, and for general relief.

The defendants demurred to the bill, and assigned the following grounds of demurrer: "1. That it appears by the bill that the plaintiff has a plain, adequate and complete remedy at law. 2. That the plaintiff has not by his bill made or stated a case which entitles him in equity to the relief or discovery prayed for."

The case was reserved, upon the bill and demurrer, by *Endicott*, J., for the consideration of the full court.

*S. H. Dudley & A. E. Pillsbury*, for the defendants.

*R. M. Morse, Jr.*, for the plaintiff.

GRAY, C. J. The plaintiff principally relies upon the doctrine of the English courts of chancery that the vendor of real estate by an absolute deed has a lien thereon for the unpaid purchase money, without proof of any agreement of the parties to that effect.

The earliest case which contains a full discussion of the doctrine, the source from which it is derived, and the reasons and authorities by which it is supported, is *Mackreth* v. *Symmons*, 15 Ves. 329, decided by Lord Eldon in 1808.

If, as the learned chancellor thought, " the doctrine is probably derived from the civil law as .to goods," it is somewhat remarkable that it was never applied in England except to real estate. Adams on Eq. 127.

The only grounds upon which it has been rested are natural equity ; a supposed intention of the parties ; and a trust arising out of the unconscientiousness of the vendee's holding the land without paying the price.

It was forcibly argued by counsel in *Blackburne* v. *Gregson*, 1 Cox Ch. 90, 100 ; *S. C.* 1 Bro. Ch. 420 ; and not answered by the court, " As to the general question of the lien, it is called a natural lien , but it certainly is not so with respect to personalty, which, if once delivered, it is conclusive, though concealed from all mankind ; and there seems as much natural equity in the case of personalty as realty."

The presumption of an intention of the parties has been well disposed of by Chief Justice Gibson : " The implication that there is an intention to reserve a lien for the purchase money, in all cases in which the parties do not by express acts evince a contrary intention, is in almost every case inconsistent with the truth of the fact, and in all instances, without exception, in contradiction of the express terms of the contract, which purport to be a conveyance of everything that can pass." *Kauffelt* v. *Bower*, 7 S. & R. 64, 76, 77.

The theory that a trust arises out of the unconscientiousness of the purchaser would construe the non-performance of every promise, made in consideration of a conveyance of property to the promisor, into a breach of trust ; and would attach the trust, not merely to the purchase money which he agreed to pay, but to the land which he never agreed to hold for the benefit of the supposed *zestui que trust*.

The earliest cases upon this subject in England were decided long since the settlement of Massachusetts ; and in all those decided before our Revolution, (except *Bond* v. *Kent*, 2 Vern. 281 in which the purchaser secured part of the purchase money by

mortgage and gave a note payable on demand for the rest, and it was held that the amount of the note was not a charge upon the land; and *Gibbons* v. *Baddall*, 2 Eq. Cas. Ab. 682, *note*, which is very briefly stated, without indicating when or by whom it was decided, in a volume called by Lord Eldon a "book of no very high character;" *Duffield* v. *Elwes*, 1 Bligh N. R. 497, 539,) either the conveyance was retained in the custody of the vendor as security for the payment of the purchase money, as in *Chapman* v. *Tanner*, 1 Vern. 267; *Pollexfen* v. *Moore*, 3 Atk. 272; *Fawell* v. *Heelis*, Ambl. 724, 726; *Coppin* v. *Coppin*, Sel. Cas. in Ch. 28; *S. C.* 2 P. Wms. 291; or the statements of the general doctrine were *obiter dicta*, as in *Harrison* v. *Southcote*, 2 Ves. Sen. 389, 393; *Walker* v. *Preswick*, Ib. 622; *Burgess* v. *Wheate*, 1 W. Bl. 123, 150; *S. C.* 1 Eden, 177, 211.

Lord Eldon himself, in *Mackreth* v. *Symmons*, said: "It has always struck me, considering this subject, that it would have been better at once to have held that the lien should exist in no case, and the seller should suffer for the consequences of his want of caution; or to have laid down the rule the other way so distinctly that a purchaser might be able to know, without the judgment of a court, in what cases it would, and in what it would not, exist." 15 Ves. 340. But he felt himself obliged to declare, as the result of all the authorities, that it was clear that different judges would have determined the same case differently; that if some of the cases, that had been determined, had come before himself, he should not have been satisfied that the conclusion was right; and that it was "obvious that a vendor taking a security, unless by evidence, manifest intention or declaration plain, he shows his purpose, cannot know the situation in which he stands, without the judgment of a court how far that security does contain the evidence, manifest intention or declaration plain upon that point." 15 Ves. 342.

So Mr. Justice Story, in *Gilman* v. *Brown*, 1 Mason, 191, 221, 222, upon a review of the English cases, concluded that the right of the vendor was not "an equitable estate in the land itself, although sometimes that appellation is loosely applied to it;" but "a right which has no existence, until it is established by the decree of a court in the particular case, and is then made subservient to all the other equities between the parties, and enforced in its own peculiar manner and upon its own peculiar principles."

The most plausible foundation of the English doctrine would seem to be that justice required that the vendor should be enabled, by some form of judicial process, to charge the land in the hands of the vendee as security for the unpaid purchase money. And the restriction of the doctrine to real estate suggests the inference that the Court of Chancery was induced to interpose by the consideration that by the law of England real estate could neither be attached on mesne process, nor, except in certain cases or to a limited extent, taken in execution for debt. 2 Bl. Com. 160, 161. 4 Kent Com. (12th ed.) 428, 429.

But by an act of Parliament, passed in 1732, lands and other real estate within the English colonies were made chargeable with debts and subject to like process of execution as personal property. St. 5 Geo. II. *c.* 7, § 4. And in Massachusetts lands had been made subject to attachment, as well as execution, by successive statutes of the Colony and Province, reaching back almost to the time of the first settlement. Col. Sts. 1644, 1647 ; 2 Mass. Col. Rec. 80, 204 ; Mass. Col. Laws (ed. 1672) 7, 104. Prov. St. 1696 (8 W. III.) *c.* 10 ; 1 Mass. Prov. Laws (State ed.) 254. Anc. Chart. 49, 154, 155, 292. 5 Dane Ab. 23. There is much less reason therefore for adopting the doctrine in this Commonwealth than in England. *Womble* v. *Battle*, 3 Ired. Eq. 182. *Wragg* v. *Comptroller General*, 2 Desaus. 509.

In *Gilman* v. *Brown*, 1 Mason, 191, 219, Mr. Justice Story said : " Nothing can be clearer than that by the law of Massachusetts no lien in any case whatever exists upon land for the purchase money." In the argument of the same case on appeal, this was admitted on both sides ; *Brown* v. *Gilman*, 4 Wheat. 255, 264, 273 ; and the Supreme Court, in the opinion delivered by Chief Justice Marshall, expressed no doubt upon that point. Mr. Dane also says that no such lien exists in Massachusetts. 3 Dane Ab. 159.

It is true that in their time this court had a very limited juris diction in chancery. But ever since 1836 it has been vested with full equity jurisdiction over all trusts, express or implied. Rev. Sts. *c.* 81, § 8, & commissioners' notes. *Wright* v. *Dame*, 22 Pick. 55. Gen. Sts. *c.* 113, § 2. During this period of almost forty years, only two attempts have been made to invoke the exercise of this jurisdiction in cases at all analogous to the present

In *Wright* v. *Dame*, 5 Met. 485, 503, the general question of vendor's lien was argued ; but as the facts of the case showed an express trust, it was not decided. But the opinion of the court in *Hunt* v. *Moore*, 6 Cush. 1, 3, strongly tends to the conclusion that the failure of a purchaser of land to pay the consideration agreed could not create an implied or resulting trust. The suggestion, at the close of that opinion, that a court of full equity powers might perhaps afford the plaintiff relief, did not relate to the trust relied on, but to an allegation of fraud, of which, as a distinct head of equity jurisdiction, this court had no cognizance until the passage of the St. of 1855, *c.* 194.

The English doctrine of vendor's lien has been adjudged not · to exist in Maine. *Philbrook* v. *Delano*, 29 Maine, 410, 415. And it does not appear to have been ever adopted in any of the New England states, except Vermont, in which, after being affirmed by the court, it has been abolished by the Legislature. *Arlin* v. *Brown*, 44 N. H. 102. *Perry* v. *Grant*, 10 R. I. 334. *Dean* v. *Dean*, 6 Conn. 285. *Atwood* v. *Vincent*, 17 Conn. 575. *Manly* v. *Slason*, 21 Vt. 271. St. of Vt. of 1851, *c.* 47. Gen. Sts. of Vt. of 1862, *c.* 65, § 33.

In *Brown* v. *Gilman*, 4 Wheat. 255, 290, Chief Justice Marshall treated the question as governed by the consideration whether the doctrine had been adopted by the law of the particular state. And the doctrine has never been affirmed by the Supreme Court of the United States, except where established by the local law. as, for instance, in Ohio, *Bayley* v. *Greenleaf*, 7 Wheat. 46 ; *Tiernan* v. *Beam*, 2 Ohio, 383 ; in Georgia, *M'Learn* v. *M'Lellan*, 10 Pet. 625, 640 ; *Harden* v. *Miller*, Dudley, 120; and in the District of Columbia, *Chilton* v. *Braiden*, 2 Black, 458 ; the doctrine having been previously affirmed in the states of Maryland and Virginia, out of which the district had been formed ; *Moreton* v. *Harrison*, 1 Bland, 491 ; *Redford* v. *Gibson*, 12 Leigh, 332 ; although it has since been abolished in Virginia by statute. *Yancey* v. *Mauck*, 15 Grat. 300.

The decisions in the courts of those and many other states in favor of the doctrine, which are collected in the notes to 2 Sugden on Vendors (8th Am. ed.) *c.* 19, suggest no reasons and afford no grounds why we should now for the first time adopt in this Commonwealth a doctrine which has never been supposed by the pro-

fession to be in force here; which would introduce a new excep-
tion to the statute of frauds; which, as experience elsewhere has
shown, tends to promote uncertainty and litigation; and which
appears to us to be unfounded in principle, unsuitable to our con-
dition and usages, and unnecessary to secure the just rights of the
parties. If no third person has acquired any rights in the land
by *bonâ fide* attachment or conveyance, the original vendor may
secure payment of the debt due him for the purchase money by
the usual attachment on mesne process. If any third person has
acquired rights in the property, there is no reason why equity,
any more than the common law, should interpose to defeat them.

It may be doubted whether, upon the case stated in the bill,
the plaintiff would be held entitled to the lien which he asserts,
in those courts which recognize the existence of a vendor's lien
for unpaid purchase money. 1 Perry on Trusts, § 235. But as
we are clearly of opinion that no such lien exists in this Common-
wealth in any case without agreement in writing, we do not pro
pose to entangle ourselves in the refinements and embarrassments
which are inseparable from its judicial consideration and affirm-
ance. .

The plaintiff further contends that his bill may be maintained
for specific performance of a subsequent agreement to reconvey
the land. But if that agreement was oral, it was within the
statute of frauds, and could not be enforced either at law or in
equity. *Glass* v. *Hulbert*, 102 Mass. 24. The allegation relating
to it — which is merely that the defendants on a certain day
and repeatedly since notified the plaintiff that they would, if he
requested it, reconvey the land to him — clearly implies that the
agreement was oral; and this fact, thus appearing upon the face
of the bill, may be taken advantage of by demurrer. *Walker* v.
*Locke*, 5 Cush. 90. *Slack* v. *Black*, 109 Mass. 496. *Farnham*
v. *Clements*, 51 Maine, 426. *Randall* v. *Howard*, 2 Black, 585.

The bill cannot be maintained on the ground of fraud; because
it alleges none in the original conveyance. The mere non-per-
formance of the subsequent and distinct agreement, which is
within the statute of frauds, does not constitute a fraud. *Camp-
bell* v. *Dearborn*, 109 Mass. 130, 140. *Brightman* v. *Hicks*, 108
Mass. 246. And for the fraud alleged in the attachment by
and conveyance to the defendant Stebbins, as well as for the non

performance of the agreement to deliver the vessel, the plaintiff has an adequate and complete remedy at law. *Jones* v. *Newhall,* 115 Mass. 244. *Suter* v. *Matthews,* Ib. 253.

The bill cannot be maintained for discovery; because it is not shown that the discovery for which it prays is anything but incidental to the relief sought or could not be had by interrogatories in an action at law. *Pool* v. *Lloyd,* 5 Met. 525. *Ward* v. *Peck,* 114 Mass. . *Demurrer sustained and bill dismissed.*