## KAINAPAU *vs.* KUKII.

IN EQUITY.   BEFORE JUDD, C.J.

APRIL, 1885.

The vendor of land has no implied lien for the unpaid purchase price, as against the vendee and a subsequent purchaser with notice.

DECISION OF JUDD, C.J.

It is averred in this bill that plaintiff conveyed the land in question on the 23d of April, 1878, for the consideration of $50, which was not in fact paid; that his grantee, shortly before his death in 1884, conveyed this land to defendant for the nominal consideration of $1 and natural love and affection; and that defendant knew at the time he received his conveyance that the purchase money had not been paid to plaintiff, and that defendant has since refused to pay the purchase money, but has offered to pay $30 in respect and in full consideration of plaintiff's claim; and prays that it may be declared that plaintiff has a lien on the land for the purchase money and interest; and that defendant may be decreed to pay the same, and in default that the land may be sold, &c.

The defendant demurs and submits: 1st. That there is no vendor's lien on the land for unpaid purchase money in this country, and the Court should not now declare it to exist. 2d. The bill discloses laches on part of plaintiff which should defeat his claim. 3d. The lien, if it exists, is barred by the statute of limitations. 4th. The vendor's lien has no existence until so declared to exist by a Court of Equity, and if the debt has meanwhile been barred by the statute, there can be nothing to establish the lien for.

BY THE COURT.

I am asked by the plaintiff to declare that a vendor has an implied lien upon the land sold by him, for the purchase money, as against the vendor and a subsequent purchaser with notice. After a somewhat extended examination, I think Mr. Pomeroy is

right when he says that "no single topic belonging to the equity jurisprudence has occasioned such a diversity and even discord of opinion among the American Courts as this of the grantor's lien." 3, Pomeroy's Eq. Jur., §1251.

Chancellor Kent (4 Kent's Com. 152) says: "The vendor of real estate has a lien, under certain circumstances, on the estate sold, for the purchase money. The vendee becomes a trustee to the vendor for the purchase money, or so much as remains unpaid, and the principle is founded in natural equity and seems to be inherent in the English equity jurisprudence."

Story, in his work on Equity Jurisprudence, says: "The principle upon which Courts of equity have proceeded in establishing this lien in the nature of a trust, is that a person who has gotten the estate of another ought not, in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money. A third person, having full knowledge that the estate has been so obtained, ought not to be permitted to keep it without making such payment, for it attaches to him also as a matter of conscience and duty. 2 Story's Eq. Jur., §1219.

Lord Eldon, in the leading case *Mackreth vs. Symmons,* 15 Ves., 329, says: "Upon principle, without authority, I cannot doubt that it goes upon this, that a person having got the estate of another shall not, as between them, keep it and not pay the consideration." But Lord Eldon himself doubts the wisdom of the rule and says "it would have been better at once to have held that the lien should exist in no case," etc.

Chief Justice Gray, in *Ahrend vs. Odiorne,* 118 Mass., 264, effectually disposes of the reasoning of Lord Eldon. He says: "The theory that a trust arises out of the unconscientiousness of the purchaser would construe the non-performance of every promise, made in conveyance of property to the promisor, into a breach of trust; and would attach the trust not merely to the purchase money which he agreed to pay, but to the land which he never agreed to hold for the benefit of the *cestui que trust.*"

The same judge also says that "the most plausible founda-

tion of the English doctrine would seem to be that justice required that the vendor should be enabled by some sort of judicial process to charge the land in the hands of the vendee as security for the unpaid purchase money. And the restriction of the doctrine to real estate suggests the inference that the Court of Chancery was induced to interpose by the consideration that by the law of England real estate could not be attached on mesne process, nor, except in certain cases, or to a limited extent, taken in execution for debt."

The principle contended for by plaintiff has been adopted by some States of the American Union and rejected by others, and in some, when recognized by the Courts, it has been abolished by statute. It has not been adopted by the Supreme Court of the United States except when established by the local law of the different states. Jones' Mortgages, §191. In the case of *Bayley vs. Greenleaf,* 7 Wheaton, 46, the Supreme Court of the United States held that a vendor cannot enforce his lien for unpaid purchase money against trustees for creditors of the vendee to whom the land had been conveyed, without notice of the lien. In this country, as in the United States, the policy of the law is to encourage the greatest freedom in the transmission of land. We have a system of registration where titles are spread for public view. Real estate is subject to attachment and sale upon execution, and the rights of grantees can be fully protected by mortgages.

I think the recognition of the doctrine that a vendor has a lien upon the land for the purchase money would be inconvenient, productive of litigation, and out of harmony with our real property laws, and accordingly sustain the demurrer on this ground.

It is not necessary to consider the remaining points.

*E. Preston,* for plaintiff.

*Kinney & Peterson,* for defendant.

Honolulu, April 3d, 1885.