PENDLETON, President,
after stating the case, delivered the opinion of the Court.
The questions are, 1st. Whether Graves was originally liable for this demand, either'as principal or security, for it' matters not which? If he was, then, whether, he was discharged hy M’Call’s acceptance of Stockdell’s bond, and the subsequent proceedings on it?
We have not a moment’s doubt, but that Graves was security for Stockdell’'s assigning good bonds; which Graves was to unite in the endorsement of, and, consequently, to become answerable for their success in payment. His idle story of having been waked from sleep to witness the agreement, without knowing its contents, if it deserved other notice, than the just ridicule bestowed on it by the Chancellor, is fully refuted by his having by the loan and endorsement of the bonds, paid in part, so far joinedin the execution of the agreement; and by his subsequent acknowledgment, as proved by the witnesses.
. His second objection is, that he carried a message from M’Call to Stockdell, to send his bond for payment of the balance; that-he carried that bond on the 19th of January, to M’Call, with a letter from Stockdell, to convey the land to the defendant, who had then purchased it; the bond was accepted by M’Call, and the property conveyed, by which it is insisted that Graves was exonerated, if he was originally liable; and the dignity of the answer is relied on to establish, as well the fact, as the consequence.^
As to the fact, “that the bond of Stockdell was given and accepted, and the property conveyed to Graves,” it is *363 not in controversy; but, that the effect, whether it operated as a discharge of Graves? is to be drawn from the nature of the transaction, and from the understanding of the parties at the time.
As to the 1st. The agreement was, that Stockdell should pay good bonds, endorsed by Graves, by the 1st of March; Stockdell’s bond was to pay good bonds by the 1st of March; which bonds he would make himself liable for, as endorser. This requiring the endorsement of Stockdell only, differs in terms from the agreement, and would give the appearance of discharging Graves from his responsibility; but that appearance is changed, when coupled with the letter accompanying the bond, referring to the agreement; which was to be delivered to M’Call, when it was performed on his part, by a conveyance, and delivering possession of the property. To no purpose was it to be delivered to him, if it was fulfilled also on the part of Stockdell, since it would be then of no consequence to either. The purpose of delivery could only be to enable M’Call to resort to Graces finally, if Stockdell should fail in performing his bond.
And how did the parties understand it?
As soon as Stockdell failed in delivering the bonds, we find M’Call applying to Graves for the agreement at several times, without effect; and, at last, is induced to drop that pursuit, upon the repeated acknowledgment of Graves that he was ultimately answerable; in confidence of which, like a humane creditor, willing to ease the security, he commenced his suit against Stockdell, to endeavor to get the money. But this proving fruitless, and he'not yet furnished with the agreement, he commenced this suit to have it brought forth and to obtain the benefit of it: All indicating that he never considered Graves as discharged.
And how did Graves understand it?
The testimony of Stokes M’Call and Miller are full and plain, that he never considered himself as discharged, even as late as July following, six months after Stockdell’s bond had been given: and there being two positive witnesses, corroborated by the written papers, the answer of Graves loses the dignity contended for.
. Upon the whole, we have no doubt, but that Graves was originally security for this demand, and that his responsibility has never been extinguished by any of the subsequent proceedings. It is then objected that the decree should have been for the assignment of bonds, and not for *364 the money: But it would be very unjust to compel M.’Call to take bonds now, (which he should have had ten years past,) and put him to the delay of new suits on them. Stock-dell, in whose place Graves is, by not delivering the bonds in time, lost the alternative, and must now pay the money. It was truly said, that a Court of Equity would not charge a security further than he is bound at law; but, if a security bound at law, cannot be charged there, for want of the instrument, of which the creditor is deprived by accident or fraud, a Court of Equity will restore the paper to its legal force. An instance is put, of a lost bond; but the present case is much stronger, the agreement being in the hands of the security and withheld by him..*
The part of the decree directing the assignment of M’ Call’s judgment to Graves, by an irrevocable power of attorney, was just and proper.
The decree is affirmed, with costs; both debt and costs to be paid out of the estate of Graves in the hands of the administrators, if sufficient; without prejudice to any suit, which the appellee may think proper to commence against the heirs of Graves, to subject the land conveyed, in their hands, to the-satisfaction of his demand, if necessary.†

[* Ward v. Webber et ux., 1 Wash. 274; and see East-India Co. v Boddam, 9 Ves. jun. 464; Skip v. Huey et al., 3 Atk. 93.] Rand. 53; Wilson et al. v. Graham’s ex’r. et al., 5 Munf 297; Bayley v. Greenleaf et al., 7 Wheat. 46; Gilman v Brown, et al., 1 Mason, 212;

[† See Cole v. Scot, 2 Wash. 141; Duval v. Bibb, 4 H. & M. 113; Hatcher’s adm’r. v. Hatcher's ex’rs., 1 Kauffelt et al. v. Bower, 7 Serg. & Raw. 64; Semple v. Burd, Ibid, 286.]