Manly et al. *v.* Slason et al.

WILLIAM MANLY AND HOWARD LATHROP *v.* FRANCIS SLASON AND
EDGAR L. ORMSBEE.

[IN CHANCERY.]

The vendor of real estate has a lien upon the estate for the payment of the pur-
chase money, as against all persons except *bona fide* purchasers, without notice
of its non-payment.

Knowledge that some portion of the purchase money is unpaid, without knowing
how much or how it is secured, is sufficient to put a subsequent purchaser on
inquiry.

In order to have a special contract between the parties, in reference to the pay-
ment of the purchase money, operate as a waiver of such lien, it must be to
*some extent inconsistent with the continued existence of the lien,*—such as the
taking of an independent collateral security. But the taking of promissory
notes for the purchase money, although payable at a future day, will not
amount to a waiver of the lien.

APPEAL from the court of chancery. The orators alleged in the
bill, in substance, that the orator Manly became the owner of cer-
tain promissory notes, executed by Ashbel Humphrey, William
Humphrey and the defendant Ormsbee, which were secured by a
mortgage of certain real estate, executed by Ashbel Humphrey; that
Ashbel Humphrey conveyed the mortgaged premises to Ormsbee,
under an agreement, that Ormsbee should pay the mortgage notes
and indemnify Ashbel Humphrey fully for all damage and cost by
reason of his having signed them; that Ormsbee conveyed the mort-
gaged premises to certain third persons; that the defendant Slason
had become obligated to Ashbel Humphrey, to indemnify him
against the mortgage notes; that on the twenty fourth day of March,
1840, Manly was about to enforce the collection of the notes by a
suit against the signers, when Slason, to induce him to forbear pros-
ecuting the signers of the notes and to pursue the mortgage securi-
ty, agreed, that if he would obtain a decree of foreclosure, and the
defendants therein should not redeem the premises, he would, im-
mediately after their neglect to make the first payment required by
the decree, pay to Manly the amount due upon such payment, and
give satisfactory security for all future payments then to become

due and payable by such decree, upon said Manly's executing to him a good and sufficient deed of the premises; that Manly accordingly brought his bill of foreclosure and obtained a decree, that the defendants therein pay to him the sum of $596,11 on or before the first Monday in April, 1841, and pay the residue of the mortgage debt by specified instalments; that the defendants in the bill of foreclosure neglected to make the payment which became due in April, 1841, and Slason applied to Manly to carry into effect the agreement made between them, and thereupon Manly executed a deed of the premises to Slason, and received from Slason six promissory notes, the first being for the amount of the first payment required by the decree, and made payable on demand, and the others being made payable at the respective times specified in the decree for the payment of the several instalments; that afterwards, on the 25th of January, 1842, Slason conveyed the same premises to the defendant Ormsbee,—the notes from Slason to Manly being unpaid,—upon condition, that Ormsbee pay the amount that Slason had paid towards the premises and the amount remaining due according to the decree of foreclosure in favor of Manly and also make certain other payments specified in the deed; that Slason and Ormsbee had wholly failed to pay the notes executed by Slason to Manly; and that Manly had assigned the notes to the orator Lathrop, as security for an existing indebtedness.

The orators prayed, that the defendants might be decreed to pay the amount due upon Slason's notes, or, in default thereof, execute to the orators a conveyance of the premises, or that the premises might be sold and the proceeds applied to the payment of the notes, and for general relief.

The defendants answered, admitting the facts substantially as alleged in the bill,—Slason insisting, that no agreement was made in reference to his giving security, at the time he executed the notes to Manly, and that the notes were received in full satisfaction and discharge of the decree of foreclosure, and that the condition in the deed executed by him to Ormsbee was not inserted for the purpose of creating a lien or security for the orators, but to preserve the rights which his creditors had acquired under a general deed of assignment previously executed by him,—and Ormsbee averring, that, at the time he received the deed from Slason, he was ignorant

of the particulars of the arrangement between Slason and Manly, and that he did not know what security Manly had taken, nor how much Slason had paid him.

The court of chancery,—Williams, Ch.,—decreed, that the defendants pay to the orators the full amount due upon Slason's notes to Manly, by a day specified, and, in default thereof, that the orators hold the premises absolutely, in satisfaction of so much of the amount due to them, as should be equal to the value of the premises,—to be ascertained by a master. From this decree the defendants appealed.

*R. Pierpoint* for orators.

Manly, the vendor of the premises to Slason, had an equitable lien upon the premises, in the hands of Slason, or any purchaser with notice, for the amount of the purchase money. And the consideration and character of the conveyance from Slason to Ormsbee affect Ormsbee with notice and confirm the lien of Manly. In England the vendor has an equitable lien upon the premises sold, for the purchase money. *Coppin* v. *Coppin*, 2 P. Wms. 291. *Austen* v. *Halsey*, 6 Ves. 475. *Nairn* v. *Prowse*, Ib. 752. *Mackreth* v. *Simmons*, 15 Ves. 329. *Grant* v. *Mills*, 2 Ves. & B. 306. *Ex parte Peake*, 1 Madd. R. 346. *Ex parte Learing*, 2 Rose 79. *Winter* v. *Ld. Anson*, 3 Russ. 488. *Topman* v. *Constantine*, Taml. 135. *Leman* v. *Whittey*, 4 Russ. 423. Story's Eq. §§ 1217–1228. In this state, in *Paris* v. *Vail*, 18 Vt. 283, Redfield, J., refers to the vendor's lien as a familiar rule of decision, both in law and chancery. In New York the vendor has an equitable lien upon the land and improvements. *Garson* v. *Green*, 1 Johns. Ch. R. 308. *White* v. *Williams*, 1 Paige 502. *Fish* v. *Howland*, Ib. 20. In Tennessee the same rule prevails. *Ross* v. *Whilson*, 6 Yerg. 50. *Oxenham* v. *Esdaile*, 3 Young & Yerg. 262. The same rule prevails in Kentucky. *Oulton* v. *Mitchell*, 4 Bibb 239. *Ewbank* v. *Reston*, 5 Monr. 287. *Gallaway* v. *Hamilton*, 1 Dana 576. *Greenup* v. *Strong*, 1 Bibb 590. *Meek's Heirs* v. *Ealy*, 2 J. J. Marsh. 330. *Voories* v. *Instone*, 4 Bibb 354. So in Maryland. *White* v. *Casanove*, 1 Har. & J. 106. *Ghiselin* v. *Ferguson*, 4 Ib. 522. So in Virginia. *Taylor* v. *Adams*, Gilm. 329. *Graves* v. *McCall*, 1 Call 414. *Handley* v. *Lyons*, 1 Mumf. 342. So in North Carolina.

35

*Henderson* v. *Stewart,* 4 Hawk. 256. *Henneway* v. *Woolfolk,* 3 Hayw. 197. And so in Connecticut. *Watson* v. *Wells,* 5 Conn. 468. 2 Sw. Dig. 115.

The vendor retains his lien upon the land against all having notice thereof, unless he have done something, which evinces his intention to abandon it. And he may resort to chancery in the first instance, to enforce his lien, without any previous suit upon the notes given for the purchase money. And his lien is not waived by taking the individual notes of the vendee for the purchase money. *Clark* v. *Hunt,* 3 J. J. Marsh. 558. *Fish* v. *Howland,* 1 Paige 20. *Johnson* v. *Thompson,* 4 J. J. Marsh. 382. *Eskridge* v. *McClure,* 2 Yerg. 85. *White* v. *Williams,* 1 Paige 462. *Garson* v. *Green,* 1 Johns. Ch. R. 308. *Cox* v. *Fenwick,* 3 Bibb 183. *Mackreth* v. *Simmons,* 15 Ves. 329. *Grant* v. *Mills,* 2 Ves. & B. 306. *Ex parte Peake,* 1 Madd. R. 364.

The orators farther contend, that by the terms of the condition of Slason's deed, Manly is entitled to payment of the sum due to him, or the land, and that a court of equity will treat Ormsbee as the trustee of Manly and compel the application of the land to the extinguishment of the debt due for the purchase.

*E. L. Ormsbee* for defendants.

It appears from the case, that the orators had no expectation of relying upon the land as security for the payment of the purchase money at the time of the sale to Slason, nor had Slason any idea of giving such security, or that it was required. Neither was it the intention of Ormsbee to give such security to the orators, at the time he received the deed from Slason, nor at that time was it Slason's intention to take such security for the benefit of the orators. The notes of Slason were received in payment; and therefore the case does not come within the decisions cited from the English courts and those from the American States. To establish the doctrine claimed by the orators would contravene the settled policy of this State; which is, to make the title to real estate and all incumbrances upon it matter of record.

Neither of the defendants can justly be considered as the trustee of the orators.

Manly et al. *v.* Slason et al.

The opinion of the court was delivered by

REDFIELD, J.   The principal question discussed in the present case is, how far the vendor of real estate has a lien for the purchase money.   It was said, in argument, indeed, that the bill, in this case, was not appropriate to any such redress.   But all the facts, necessary to the creating such a right, being alleged in the bill, and the prayer of the bill being consistent with such relief, we do not think the fact, that redress was primarily sought upon another ground, any obstacle to the relief now asked.   And as the only ground of relief, upon which the plaintiff could prevail, is that of the vendor's lien for the purchase money, we come at once to its consideration.

There can be no doubt, that the existence of such a lien is among the settled doctrines of the English chancery.   That has long been a conceded point.   And it seems now to be equally well settled in the English courts of chancery, that the vendee of real estate, after paying the purchase money, acquires a lien upon the estate, before its conveyance, as against all but *bona fide* purchasers, without notice.   This limitation attaches to the lien of the vendor for the purchase money also.   2 Story's Eq. Jur. §§ 788, 789, 1217, and following sections and notes.   The subject will also be found fully and thoroughly discussed and digested by Judge METCALF, in his edition of Yelverton, in a very elaborate and valuable note to the case of an *hostler*, p. 66.   It will hardly be necessary to advert, in detail, to the numerous decided cases upon this subject, in the English books.   There has been constant discussion there, as to what shall amount to a waiver of such lien.   Indeed, that has been a difficult subject, in the English courts, as to all liens.   The note of Judge Metcalf is addressed principally to the elucidation of that point.   It is there shown very clearly, that the English cases, which attempted to make out that a waiver of the lien occurred in every case, where any special contract as to the price was made between the parties, even as to the time of payment, was untenable and subversive of the very basis of all liens, that is, security to the creditor.   It is undoubtedly true, that in order to have a special contract amount to a waiver of a lien, it must be to some extent *inconsistent with the continued existence of such lien*, and thus show a virtual understanding between the parties, that the lien shall be waived.   We should not be prepared to say, that this lien depended upon the contract, or

the probable expectation of the parties, in the outset. For if that rule were to be adopted, there would remain few cases, to which the rule would apply, as said by WALWORTH, Ch., in *Fish* v. *Howland*, 1 Paige 20. For if the vendor supposed there would be any necessity to resort to such lien, he would ordinarily take a formal mortgage. And it is no doubt true, that many of our citizens are wholly uninformed of any such lien; and the same is no doubt true of many other rights, which nevertheless exist, by way of lien,—as the right to refuse to deliver goods sold, until the price is paid, and the right to stop them *in transitu.*

The doctrine of lien does not depend at all upon any supposed express contract of the parties, or upon any implied understanding, unless it is in regard to the *waiver* of such liens, but upon custom, usage, and general law. And when it exists, it is not essential, that it should have been in the contemplation of the parties; for if so, each case must be decided upon its own circumstances, and the right of a taverner, or manufacturer, to the security of a lien, would depend upon his knowledge of the law and his want of confidence in his customers. These liens, as a general thing, are intended for the better security and encouragement of particular classes of trade and business, and are in fact *most* important, in those very cases, where the creditor finds his debtor unworthy of that full confidence, which had been incautiously, perhaps, extended to him, and also to prevent the necessity of constant inquiry into personal responsibility in small matters. Liens in general are important for the encouragement of business, and, to answer that end, must depend upon *general law*, and not upon each particular case. So of the lien in this particular class of cases, its foundation exists in the general principles of equity and moral justice, by which the seller is entitled to hold on upon the estate, until he gets the price; and to answer its main purpose, it must be general and uniform, unless waived. These principles are distinctly recognized in 2 Story Eq. Jur., p. 465, 466, § 1220 *et seq.; Gilman* v. *Brown*, 1 Mason 212; *Hughes* v. *Kearney*, 1 Sch. & Lefr. 132. Lord REDESDALE, chancellor, says, an attempt to hold the estate without the payment of the purchase money is "*prima facie* a fraud; it would lie on him to show it was not a fraud. So it lies on the purchaser to show, that the vendor agreed to rest on the collateral security; *prima facie* the purchase money is a lien on the lands."

In *Mackreth* v. *Simmons*, 15 Ves. 349, Lord Chancellor Eldon says, after an elaborate review of the authorities from the case of *Hearn* v. *Botelers*, Carey 25, downwards, in regard to this subject: " From all these authorities the inference is, that, generally speaking, there is such a lien." In *Garson* v. *Green*, 1 Johns. Ch. R. 308, Chancellor Kent says, " *Prima facie* the purchase money is a lien on the land, and it rests on the purchaser to show, that the vendor agreed to rest on other security." The lien of partners, and through them of the partnership creditors, depends in no sense upon the knowledge or the expectation of the parties, and so of almost all constructive or implied trusts, or liens.

It is then incumbent upon the defendant, in a case like the present, to show either an express or implied waiver of this lien. What shall amount to such waiver is not fully settled, perhaps. In the Roman law, from which the chancery courts, no doubt, derived this notion of giving the vendor a lien for the purchase money of real estate, the mere taking of a security of the vendee, for the purchase money, is a waiver of the lien ; but in equity, such security, even by way of a bill endorsed by a third person, is not, of necessity, a waiver, even although secured to be paid at a future day, or not until after the death of the purchaser. And this lien is good against all subsequent purchasers and incumbrancers, with notice that the purchase money remains unpaid. 2 Story's Eq. Jur. 473, 474, 476, §§ 1225-1228, and notes and numerous cases there cited, both English and American. But, perhaps, it may be considered as now settled, that the taking of security, beyond that of the vendee, whether personal, or by way of mortgage upon the same or other real estate, or by pledge or mortgage of personal estate, either for the whole or part of the purchase money, will ordinarily be esteemed sufficient evidence of a waiver of the lien, although by no means conclusive. One of the strongest cases to be found in the books, in favor of maintaining this lien, is that of *Winter* v. *Lord Anson*, 3 Russell 488, before Lord Lyndhurst, in 1827, reversing the decision of the Vice Chancellor. *S. C.*, 1 Simons & Stewart 434. The rule laid down by Lord Lyndhurst is, that although the purchase money was secured by the bond of the purchaser, and to remain so during the life of the vendor ; and although the conveyance expressed, *that the purchase money had been paid, and the vendor's*

*receipt, to that effect, was endorsed on the conveyance,* still that the lien upon the land continued until the bond was paid. If I were to form an opinion of the probable intention of the parties, in regard to the waiver of the lien, from the facts in the case, which, indeed, should govern, I should certainly quite as much incline to the opinion of the vice chancellor, Sir JOHN LEACH, as to that of the chancellor. But we are not aware, that the decision of the chancellor has been seriously questioned, although it is, no doubt, carrying the doctrine to its utmost verge. There is nothing in the present case, which we could in any sense consider a waiver of the lien. And no question can be made, that the defendant Ormsbee must be affected with constructive notice of the non-payment of the purchase money. The deed of the premises contained an express provision, that Ormsbee shall pay to Slason *the amount then due to the orator for the purchase money,* which would be sufficient to put Ormsbee on inquiry *how much.* Indeed, Ormsbee admits, in his answer, that he expected some portion of the purchase money remained unpaid, but how much, and how it was secured, he did not know. This is just that kind of notice, which should have put him upon inquiry.

But the defendants have made a chief reliance, in the argument, upon the proposition, that the doctrine of equitable liens, in favor of the vendor of real estate, was not applicable to our laws, and should not be here enforced. It is true, no doubt, that the existence of any such lien has not very generally been regarded by the parties to contracts of that kind, in this state. It has not before, to our knowledge, been brought before this court. But there can be no doubt, we apprehend, that it is a highly equitable doctrine, and eminently consistent with the most perfect notions of moral justice. It has existed in the English equity courts for centuries. It has been adopted in most of the American states, whose equity systems may be regarded as at all settled, and in the national courts. *Ross v. Whitson,* 6 Yerg. 50. *Outlaw v. Mitchell,* 4 Bibb 239. *Ewbank v. Reston,* 5 Munro 287. *White v. Casanave,* 1 Har. & John. 106. *Ghiselin v. Ferguson,* 4 Ib. 522. *Graves v. M'Call,* 1 Call 414. *Galloway v. Hamilton,* 1 Dana 576. *Handley v. Lyons,* 1 Munf. 342. *Wynne v. Allston,* Dev. Eq. 163. *Henderson v. Stuart,* 4 Hawkes 256. *Watson v. Wells,* 5 Conn. 468. *Greenup v. Strong,* 1 Bibb 590. *Meek's Heirs v. Ealy,* 2 J. J. Marsh. 330. *Voorhies*

v. *Instone*, 4 Bibb 354. *Garson* v. *Green, supra ; Bailey* v. *Green-leaf*, 7 Wheat. 46, 50. And the same principle is again recognized by Mr. Justice McLean, in *McLearn* v. *McLellan*, 10 Pet. R. 625; —and numerous other cases might be cited.

That the existence of these liens is inconsistent with our registry or attachment laws is an objection no more formidable, than exists from the same source against most constructive or implied trusts and liens, existing in or growing out of the numerous equitable rights, peculiar to real estate, and which have nevertheless been regarded and enforced, in this state, upon the settled principles of the English chancery. An absolute deed of land, with a parol defeasance, for the security of a debt, is of this character. So are all resulting trusts, in favor of the person paying the consideration money for a deed of land, executed to some third person. And this right has been enforced in favor of a married woman even; *Pinney* v. *Fellows*, 15 Vt. 525; where the whole subject of resulting trusts is very elaborately and satisfactorily discussed, and the authorities, bearing upon that point, learnedly digested by BENNETT, J.

Any argument, which is attempted to be drawn from the statute of frauds, is equally applicable to the English statute. But many cases, coming, in terms, within that statute, have been saved from its operation by courts of equity. Such are cases of part performance of the contract, the deposit of title deeds, to secure a debt, &c. The payment of the price of land, before the execution of the conveyance, and the execution of the conveyance, without the payment of the price, as well as the execution of an absolute deed, for the security of a debt, and all resulting trusts, and many others, are of this character. It has been urged, that the existence of such a lien will unreasonably clog the free circulation of property, and that it is otherwise inconsistent with our habits of business, and modes of conveyance. But such an objection, if, indeed, it be properly comprehended by the court, seems far too uncertain and indefinite to form any just ground of decision in a court of justice. We, however, apprehend no serious embarrassment will result to the community from the determination here made. This lien can only be enforced in a court of equity, where all equitable considerations will be open to both parties. The cases will be few, and to entitle the plaintiff to redress, he must show a case of manifest equity, in proof,

and in principle.   In my judgment, such a rule is far less in danger of being abused to the public detriment, than are stringent rules of law, enforced with an iron hand, through fear of relaxation.   But I am not specially fearful of the abuse of the law, from rigid adherence to principle, as evolved from the decided cases.   There is in our day, perhaps, more danger of too great and sudden departure from the ancient landmarks of the sages of the law, which have been long tried, and become easy and comfortable, in pursuit of the *ignes fatui* of modern progress and innovation.   We should not have felt called upon to say any thing upon this portion of the case, had it not been for the great zeal and evident sincerity with which these considerations were pressed upon the court.