TURNEY SOULE AND ANOTHER vs. WALTER F. HURLBUT AND OTHERS.

Hartford Dist., Jan. T., 1890. ANDREWS, C. J., CARPENTER, PARDEE LOOMIS and THAYER, Js.

The plaintiffs built a barn under a contract with the owner of the land, beginning to furnish labor and materials on the first day of April, 1887, and afterwards filing a lien therefor from that date. When, a short time before this, the land was conveyed to A, his father gave a joint note with him to the vendor for $2,000, a part of the price, which note was to fall due April 1, 1887, and it was agreed between the father and son that if the father paid the note when due, the son should execute a note and mortgage to him for $2,000 and put the mortgage at once on record. The father paid the note and supposed his son had made the mortgage and put it on record on the first of April. By the neglect of the son it was not made or recorded till the June following. Held that the plaintiffs' lien took precedence of the mortgage.

When the plaintiffs were about to begin work their agent asked the owner if the deeds of the premises were made, to which the owner replied that they were and that his father had given his note for $2,000. Held not to be notice that his father held an agreement for a mortgage to secure the note.

Whether a vendor's lien exists in this state: Quære.

If it does, yet as in this case the vendor was not the party claiming the lien, the principle would have no application here.

And it is generally held that a vendor's lien is not assignable.

And where the vendor does not rely upon the credit of the vendee, but takes security for either the whole or a part of the purchase money, it is generally considered as a waiver of the vendor's lien.

[Argued January 10th,—decided March 31st, 1890.]

SUIT for the foreclosure of a builders' lien; brought to the Court of Common Pleas of Litchfield County, and heard before *Warner, J.* The court made a finding of the facts, and granted a decree of foreclosure against the principal defendant, but held that the plaintiffs' lien was subject to a mortgage held by another of the defendants. The plaintiffs appealed. The case is fully stated in the opinion.

*J. Huntington,* with whom was *A. D. Warner,* for the appellants.

1. The mortgage to Erastus F. Hurlbut could not affect the plaintiffs' lien until it was executed on the 2d of June, 1887, which was long after they had begun to furnish the materials for the building of the barn, and two months after their lien took effect. It is not found that they had any such notice of the agreement under which it was given as would create an equity in favor of the mortgagee. The only claim that such notice was given is founded on the reply of Walter F. Hurlbut to the enquiry of the plaintiffs' agent with regard to the deeds of the place. It is found that their agent enquired of him "if the deeds of the premises were made," and that he replied that they were and that "his father gave his note for $2,000." This cannot be regarded as notice that his father was to have a mortgage to secure him for giving the note.

2. There is no vendor's lien in the case. The principle of a vendor's lien has never been recognized in this state. *Dean* v. *Dean,* 6 Conn., 285; *Meigs* v. *Dimock,* id., 458; *Atwood* v. *Vincent,* 17 id., 575; Adams's Eq., (Ed. 1873,) Sharwood's notes, p. 128. And it ought not to be adopted. *Ahrend* v. *Odiorne,* 118 Mass., 261; *Bayley* v. *Greenleaf,* 7 Wheat., 46; 1 Jones on Mortg., (3d ed.,) §§ 189 to 192, and notes.

3. If a vendor's lien exists in this state, yet it would not aid the mortgagee in sustaining his claim. Such a lien exits only between the vendor and vendee, and a third person cannot avail himself of it. 2 Swift's Dig., 128; 1 Jones on Mortg., §§ 193, 212; *Albright* v. *LaFayette &c. Asso.*, 102 Penn. St., 411; *Stansell* v. *Roberts*, 13 Ohio, 148; Note to *Campbell's Appeal*, 78 Am. Dec., 379. And it is lost by taking security for the purchase price or any part of it. 1 Jones on Mortg., § 207; 2 Story Eq. Jur., § 1226, note 1; 4 Kent's Com., 153; Adams's Eq., Sharsw. notes, 287; *Conover* v. *Warren*, 1 Gilman, 498; *Schnebly* v. *Ragan*, 7 Gill & J., 120. And the lien could not be assigned, and the mortgagee could take nothing by any subrogation to the vendor's rights. 1 Jones on Mortg., § 213.

*L. D. Brewster* and *F. M. Williams*, for the appellee.

1. The agreement to give the mortgage gave a lien to the mortgagee good against all subsequent incumbrances with notice. 1 Jones on Mortg., § 163, (approved in *Hall* v. *Hall*, 50 Conn., 111); 1 Jones on Liens, 77. In the latter authority the doctrine is thus stated: " An agreement, on a sufficient consideration, to give a mortgage on specific property, creates an equitable lien upon such property, which takes precedence of the claims of the promisor's general creditors and of the claims of subsequent purchasers and incumbrancers with notice of the lien ;" citing numerous authorities. " A prior equitable lien is preferred to ·a mechanics' lien upon the same property, though the claimant under the latter had no notice of the equitable lien at the time his lien took effect. *Paine* v. *Wilson*, 74 N. York, 348. See also 3 Pomeroy's Eq., § 1237, and notes, citing many cases. In the case at bar the appellants had notice which should have put them on inquiry that the purchase money was paid by Erastus Hurlbut. Instead of investigating further they went on with the building of the barn without even knowing who the legal owners were. The finding is that " the plaintiffs supposed and believed that said Walter F. was the owner in fee of the premises, and that they were free from

all incumbrances.  They made no examination of the records to ascertain the condition of the title until they filed their lien."   Knowledge that some portion of the purchase money is unpaid, without knowing how much, or how it is secured, is sufficient to put a subsequent purchaser on inquiry.   2 Pomeroy's Eq., § 599, and notes; Wade on Notice, §§ 19, 48; Phillips on Mech. Liens, § 243; *Manly* v. *Slason*, 21 Vt., 271; *Parke* v. *Chidwick*, 8 Watts & S., 96; *Frail* v. *Ellis*, 16 Beav., 350.   The appellants cannot set up the statute of frauds on the ground that the agreement was not in writing. A third party cannot invoke the application of the statute for his own benefit.   Browne on Statute of Frauds, § 135; 3 Parsons on Cont., 5th ed., 58; 8 Am. Encyc. of Law, 659, note six, and cases there cited.   Besides this, the contract is executed, and so "the statute has no power over it." 3 Parsons on Cont., 5th ed., 58.

2.  The appellants were guilty of "culpable negligence " in making no inquiry as to the title, even if they had received no notice that the appellee had paid half the purchase money.  1 Pomeroy's Eq., § 612: Phillips on Mech. Liens, § 332; Wade on Notice, § 17.   Taking then the two great maxims of equity, "that other things being equal, priority in time gives the better equity," and "that when there is equal equity the law must prevail," we submit that we are entitled to the benefit of both under the exact application of these maxims as given in the leading works on equity jurisprudence.  "When a purchaser of property for a valuable consideration and without notice of a prior equitable right to or interest in the same subject matter, obtains the legal estate in addition to his equitable claim, he becomes in general entitled to a priority both in equity and at law." 1 Pomeroy's Eq., § 417.   "An unfiled mechanics' lien and an unrecorded mortgage stand on the same footing.   Both are silent claims."   Kneeland on Mech. Liens, §§ 139, 202; *Wing* v. *Carr*, 86 Ill., 347.   There is nothing in the appellee's claim that conflicts with the just maintenance of our registration system.   When the mechanic or material man does not take the trouble to look at the records, or even to find

out the owners of the premises on which he is to build, and that too after his agent is notified of unpaid purchase money, is it not directly within the spirit as well as letter of the registry law to hold the document first recorded entitled to the priority? In so far forth as the mechanics' lien relates back to the commencement of the work it is itself in conflict with the theory of registration. Nor are the appellee's claims unjust to the appellants. They were not deceived by the appellee's negligence. On the other hand, either their agent, Titus, neglected to inform them of the unpaid purchase money, or, being informed, they paid no heed to the information. They lived on the spot and had every opportunity for immediate information. The appellee lived in another town. If each party was negligent as to his inchoate lien, certainly the negligence of the appellants was under all the circumstances far more gross and inexcusable. •

3. A vendor of real estate has a lien against all subsequent incumbrancers for the payment of the purchase money, if they have notice. 2 Swift's Dig., 128; *Watson* v. *Wells*, 5 Conn., 468; *Meigs* v. *Dimock*, 6 id., 458; *Atwood* v. *Vincent*, 17 id., 575; *Chapman* v. *Beardsley*, 31 id., 115; *Middletown Savings Bank* v. *Fellowes*, 42 id., 36; *Hall* v. *Hall*, 50 id., 104, and cases cited on p. 107. This lien has been adopted in twenty-four states and has been engrafted in the codes of several states within recent years. Perry on Trusts, § 232, and note; 3 Pomeroy's Eq., § 1249; 25 Am. Law Register, 393. " The lien," says Perry, (§ 232, *supra*), "is founded in natural justice." "The principle," says Chancellor KENT (4 Com., 12th ed., 152), "is founded in natural equity." The reasoning of Justice GRAY in *Ahrend* v. *Odiorne*, 118 Mass., 261–266, in opposition to the lien, is pronounced by Mr. Pomeroy as "imperfect" and "unsatisfactory," (3 Pomeroy's Eq., § 1280, note,) and the objection of Mr. Pomeroy only goes to the question of registration, which we have already discussed, so far as affecting this case. " The lien of a vendor for the purchase money must undoubtedly be considered as a settled principle of Ameri-

can law, so far as this depends on the weight of authority."
1 Hilliard on Mortgages, 690. "It rests on the plain prin-
ciple of equity." Fisher's Law of Mortgages, § 203; Coots
on Mortgages, 227; Story Eq. Jur., §§ 1217, 1218, and
note 3. Whenever by an arrangement between the parties
a note for the purchase price is given by the grantee to a
third person instead of the grantor, such person is generally
held entitled to enforce the lien. 3 Pomeroy's Eq., § 1254,
note 3; 2 Washb. R. Prop., 96, § 17; *Perkins* v. *Gibson,* 51
Miss., 699; *Nichols* v. *Glover,* 41 Ind., 24; *Latham* v. *Sta-
ples,* 46 id., 462; *Campbell* v. *Roach,* 45 Ala., 667; *Hamilton*
v. *Gilbert,* 2 Heisk., 680; *Mitchell* v. *Butt,* 45 Geo., 162;
*Francis* v. *Wells,* 2 Col., 660. As to prior judgment credi-
tors, the mortgagee of the vendee has the same preference
as the mortagee of the vendor. *Kaiser* v. *Lembeck,* 55 Iowa,
244, citing many cases. The notice to the agent of the ap-
pellants was sufficient. See cases before cited on notice,
and 2 Pomeroy's Eq., § 597; Wade on Notice, §§ 5, 17, 33;
*Blatchley* v. *Osborne,* 33 Conn., 226; *Blaisdell* v. *Stevens,* 16
Verm., 179; *Stafford* v. *Ballou,* 17 id., 329; *Cambridge Val-
ley Bank* v. *Delano,* 48 id., 326; *Williamson* v. *Brown,* 15 N.
York, 354; *Ledos* v. *Kupfrian,* 28 N. Jer. Eq., 161; *Brinker-
hoff* v. *Vansciven,* 4 N. Jer. Ch., 251; *Baum* v. *Grigsby,* 21
Cal., 176; *Harshbarger* v. *Foreman,* 81 Ill., 364. The lien
is not waived until the security is actually taken, although
there be an agreement to receive it. 2 Jones on Liens,
§ 1088; *Jones* v. *Vantress,* 23 Ind., 533; *Dunlap* v. *Burnett,*
5 Sm. & Marsh., 702.

4. Do we then claim a vendor's lien in this case as well
as an equitable lien under the original contract? Not nec-
essarily. But we say that the knowledge of the unpaid
purchase money gave the appellants not only notice that
there was *some* lien on the property, but gave this notice
more directly and definitely if the vendor's lien exists *to any
extent* in Connecticut, and we have suggested that if adopted
at all we are justified in assuming that it will be carried to
its logical results.

LOOMIS, J.   This is a complaint to foreclose a mechanic's lien for labor and materials furnished by the plaintiffs in the erection of a barn on land owned jointly by Walter F. Hurlbut and Hattie R. Hurlbut, his wife.   The facts found by the court are in substance as follows :

Walter F. Hurlbut and his wife purchased the premises in question August 30th, 1886, and immediately went into possession and continued to occupy the same until after this suit was brought.   In March, 1887, Mr. Hurlbut contracted with the plaintiffs to build a barn on the premises. They commenced work and furnished materials for the barn April 2d, and completed it on the 16th day of April, 1887. They placed their mechanics' lien thereon within sixty days after the completion, on June 10th, 1887.

· The mortgage deed held by the other defendant, Erastus J. Hurlbut, to which it is sought to give priority to the plaintiffs' lien, was not executed and recorded until June 2d, 1887, after the commencement of the services and the furnishing of materials by the plaintiffs.   This mortgage originated as follows:   Walter F. Hurlbut and his wife on August 30th, 1886, gave their note to Camp for $2,000, and to secure the same gave him a mortgage of the premises, which was then duly recorded.   At the same time Erastus J. Hurlbut, the father of Walter F., gave a joint note with his son to Camp for $2,000, payable to him on the first day of April, 1887.   It was agreed between the father and son and his wife that if the father should pay the note on the first day of April the son and wife would give him their note for $2,000 and secure the same by a mortgage of the premises.   The father, residing three or four miles out of · the village, on the 31st of March, 1887, sent by one Todd the sum of $2,000 to his son to be paid over to Camp to take up the note, and on the next day it was so paid.

The father sent the money expecting and believing that his son and wife would make their note and mortgage in pursuance of their agreement forthwith, and cause the mortgage to be duly recorded, as they resided next door to the town clerk's office.   But through the mistake or negligence

of the son the mortgage was not given and recorded until the 2d of June, 1887. The father in the meantime supposed that all this had been done on the first day of April, 1887.

The court finds that the plaintiffs had no knowledge of the above arrangement except as follows: About the time one Titus, as agent of the plaintiffs, contracted to build the barn, he inquired of Walter F. if the deeds of the premises were made; and he replied that they were, and that his father gave his note for $2,000.

The pleadings raised sundry issues affecting the validity and extent of the lien, all of which were decided in favor of the plaintiffs, except the claim that the lien attached to the undivided interest of Hattle R. Hurlbut, the wife, in the premises, which the court overruled. But the court found that the plaintiffs' lien upon the undivided half of the premises owned by Walter F. Hurlbut was subject to a mortgage executed and recorded June 2d, 1887, in favor of the other defendant, to whom the premises afterwards and before this suit had been conveyed. The objection to the ruling of the court exempting from the lien the undivided interest of Hattie R. Hurlbut, although at first assigned for error, was expressly waived by the counsel for the plaintiffs before this court; so that the sole question for our consideration now is, whether there was error in holding that the mortgage of Erastus J. Hurlbut was prior in right to the lien of the plaintiffs upon the undivided half of the premises owned by the defendant Walter F. Hurlbut.

The record shows that the plaintiffs' lien attached on the second day of April, 1887, when they commenced furnishing their labor and materials, and as the mortgage to which the court gave priority was not executed till two months after that date, the error of the court is manifest, unless the facts found are sufficient to give an equitable existence to the mortgage in question more than two months before it had any legal existence.

The statute, (Gen. Statutes, § 3018,) explicitly declares that the mechanics' lien " shall take precedence of any other

incumbrance originating after the commencement of such services or the furnishing of such materials."

Ordinarily the question of priority can be easily and conclusively determined simply by comparing the date of the commencement of the claim for materials or service with the date when the other incumbrance was received for record in the town clerk's office, and the owner of the mechanics' lien has the same rights as any incumbrancer by mortgage would have to rely on the state of the land records at the time as conclusive in his favor. He must however act in good faith, and have regard to facts of which at the time he has knowledge affecting the rights of others, as well as to facts which appear or fail to appear of record. So that facts existing in his own mind not appearing of record, may in equity prevent the state of the record from being conclusive as to his rights of priority. And this brings us to consider the precise claim of the defendants in the case under consideration.

It is found that on the 30th of August, 1886, at the time Walter F. and his wife purchased the premises of one Camp for the sum of four thousand dollars, they gave their note to Camp for two thousand dollars, and secured it by a mortgage back of the premises purchased, and that for the balance Walter F. and his father Erastus J. Hurlbut gave their joint note to Camp for two thousand dollars payable on the first of April following, and it was then agreed between Walter F. and wife and Erastus J. that if the latter paid the note when due, then the former would give their note for the same amount and secure it by a second mortgage of the premises, and that Erastus J. made the payment accordingly, relying upon the agreement to give the mortgage, and he supposed it had been so given on that day.

This it is claimed created in the father an equitable lien or mortgage, commencing on the first of April, 1887, and good against the lien of the plaintiffs commencing the next day, provided it appears that the plaintiffs had knowledge of the arrangement prior to the second day of April. We accept this as embodying a true principle of law. But the controlling question is, whether the plaintiffs had the requi-

site knowledge to bring this case within the principle stated. The only notice, actual or constructive, that is claimed is, that about the time (March, 1887,) that the agent of the plaintiffs contracted for the building in question, he inquired of Walter F. if the deeds of the premises were made, and he replied "that they were, and his father gave his note for two thousand dollars." The sole point of inquiry was whether the deeds had been given, which was answered in the affirmative, and assured the plaintiffs' agent that the person with whom he was about to make a building contract owned the land, so that there would be security for the outlay the plaintiffs were asked to make. To show how he was able to obtain the premises it was perhaps natural to add, as he did in substance, that his father helped him; or to give the language literally, "his father gave his note." This might import either that the note was given to some third party to raise money to pay for the property, or that it was given directly to the vendor. But it gives no hint and raises no suspicion that any such special contract between Walter F. and his father had been made as is now relied upon. In view of the obvious point of inquiry it would seem most natural for Walter F. to refer to the agreement with his father affecting the title, if any such existed. So that the omission might well operate to furnish confirmation that the title was all right, instead of being doubtful in any respect. Moreover, the statement as made would seem even misleading as to the existence of any such incumbrance, for its natural effect would be to lead the mind of the inquirer away from anything done as affecting the property to satisfy the father, to something done to satisfy the vendor and induce him to give the deed. But whatever weight such speculations may have, we feel confident that the fact referred to falls far short of notice, actual or constructive, of the existence of any contract creating an equitable lien or mortgage in favor of the father. In anticipation of such a result the counsel for the defendants made the further claim that the fact referred to would at least show that the purchase money had not been paid, and therefore it would amount to notice of

Soule v. Hurlbut.

the existence of a vendor's lien.   The notice to the plaintiffs' agent referred to a transaction then about seven months past, and of course indicated nothing as to any payments made or as to the amount then due.   But we prefer to waive that and assume that if any vendor's lien could exist for the benefit of the father the plaintiffs were put upon inquiry relative to its continued existence and relative to payments.

Could there be any such lien under the circumstances of this case?   If there be no such thing as a vendor's lien in this state no further answer could be required.   Up to this time the doctrine has not been recognized, except in a way to leave the question doubtful.   It has been somewhat discussed in several cases, but finding its determination unnecessary for the disposal of any of the cases the court has hitherto avoided a decision of the question.   *Watson* v. *Wells*, 5 Conn., 468; *Dean* v. *Dean*, 6 Conn., 287; *Meigs* v. *Dimock*, 6 Conn., 458; *Atwood* v. *Vincent*, 17 Conn., 575; *Chapman* v. *Beardsley*, 31 Conn., 115; *Hall* v. *Hall*, 50 Conn., 104.

The circumstances of the present case will allow the court consistently and with propriety to avoid any decision of the question again.   There are several other independent answers to this claim.   In the court below the only claim of a lien in favor of the father was founded solely upon the special agreement that he was to have a mortgage, and such claim seems to us utterly inconsistent with the claim of a vendor's lien.   But if not inconsistent, and if we apply to this case the doctrine of a vendor's lien as it obtains generally in other jurisdictions, it will be seen that there can be no such lien in this case, for there is no vendor here to claim and enforce it, and none of the defendants show or claim any authority from or under the vendor to claim the lien. It is very generally held by the courts of other states that a vendor's lien is personal and not assignable, and that there can be no subrogation.   Such we understand to be in substance the doctrine as held by the courts of Arkansas, California, Georgia, Illinois, Iowa, Maryland, Mississippi, Missouri, North Carolina, New York, Ohio and Tennessee. But in the case at bar there was not even a pretense of any

assignment from the vendor.   Moreover the vendor himself had no lien that he could assign, for in those states where the lien is recognized it is generally considered well settled that the taking of security beyond that of the vendee, whether personal, or by way of mortgage upon the same or other real estate, or by pledge or mortgage of personal estate, either for the whole or part of the purchase money, will ordinarily be considered sufficient evidence of a waiver of the lien.   *Manly* v. *Slason*, 21 Verm., 277; 2 Swift's Digest, top p. 128; 3 Parsons on Contracts, 278; 1 Jones on Mortgages, 2d ed., §§ 207, 213; 2 Story's Eq. Jur., § 1226, note *l*; *Schnebly* v. *Ragan*, 7 Gill & Johns., 120; Note to same case, 28 Am. Dec., 195; *Cupper* v. *Spotteswood*, 1 Saund., 21.

There was error in holding that the mortgage or lien in favor of Erastus J. Hurlbut was prior in right to the lien of the plaintiffs, and to that extent the judgment is reversed.

In this opinion the other judges concurred.